## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

J. KENNETH KRUVANT, et al.,

    Plaintiffs,

      v.

DISTRICT OF COLUMBIA, et al.,

    Defendants.

Civil Action No.  03-1402 (JDB)

## MEMORANDUM OPINION

Plaintiffs, Mackenzie Kruvant through her parents J. Kenneth Kruvant and Cathy Kruvant, bring this action against the District of Columbia and the Superintendent of the D.C. Public Schools ("DCPS") under the Individuals with Disabilities Education Act ("IDEA" or "the Act"), 20 U.S.C. §§ 1400 et seq.  They challenge an administrative determination for the 2002-2003 school year that Mackenzie did not qualify as a child with a disability, and thus was ineligible for special education services.  Now pending before the Court are plaintiffs' and defendants' cross-motions for summary judgment.[1]

The primary issue in the resolution of this case is the scope of DCPS's duty to evaluate a student where an administrative determination for a prior school year -- here, one for the 2000-2001 school year -- has concluded that the child does not have a disability under IDEA.  Plaintiffs contend that DCPS had an affirmative duty to conduct new evaluations and that the prior

---

[1] Plaintiffs assert that defendants' motion for summary judgment should be denied because it was filed after the deadline set forth in the briefing schedule entered in this case.  The Court finds that the delay in filing caused no prejudice to plaintiffs.  Defendants' motion for summary judgment is also the same document as its opposition to plaintiffs' motion, for which defendants were granted extensions of time to file.  For these reasons, the Court exercises its discretion to consider defendants' motion for summary judgment on the merits.

determination is of no relevance.  Defendants contend that the prior administrative determination

is dispositive of the child's ineligibility in the absence of plaintiffs coming forward with relevant

new information.  A review of the relevant statutory and regulatory provisions and case law

reveals that the impact of a prior determination is not so one-sided as either plaintiffs or

defendants would have it, but rather depends on the record developed in each case.  For the

reasons explained below, the Court grants defendants' motion for summary judgment, and denies

plaintiffs' motion for summary judgment.

## STATUTORY BACKGROUND

Under the IDEA, all states, including the District of Columbia, that receive federal

educational assistance must establish policies and procedures to ensure that "a free appropriate

public education [FAPE] is available to all children with disabilities residing in the State. . . ." 20

U.S.C. § 1412(a)(1)(A).  A "child with a disability" is a child with a listed disorder or "specific

learning disabilities" who "by reason thereof, needs special education and related services."  Id.

§ 1401(3)(A).  "Specific learning disability" means "a disorder in one or more of the basic

psychological processes involved in understanding or in using language, spoken or written, which

disorder may manifest itself in imperfect ability to listen, think, speak, read, write, spell, or do

mathematical calculations."  Id. § 1401(26)(A).  More detailed criteria for determining the

existence of a "specific learning disability," set forth at 34 C.F.R. § 300.541, provide that such a

disability may be found if a team of qualified professionals finds that:  (1) the child does not

achieve commensurate with his or her age and ability levels in one or more of the following areas:

oral expression; listening comprehension; written expression; basic reading skills; reading

comprehension; mathematics calculation; or mathematics reasoning; and (2) the child has a

"severe discrepancy between achievement and intellectual ability" in one or more of those areas.[2]

Before a State or local educational agency may commence the initial provision of special

education services to a child with a disability, it must conduct an "initial evaluation" which "shall

consist of procedures to determine whether a child is a child with a disability."  The Act requires

the local educational agency to:

> (A) use a variety of assessment tools and strategies to gather relevant functional
> and developmental information, including information provided by the parents,
> that may assist in determining whether the child is a child with a disability . . .;

---

[2]  The IDEA was amended on December 3, 2004, and provided that the amendments "shall take effect on July 1, 2005," in most respects.  See Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647, 2803 (2004).  The amendments provide, inter alia, that a "severe discrepancy between achievement and intellectual ability" is no longer required in considering whether a child has a "specific learning disability."  Id. at 2706 (amending Section 614 of the IDEA, now codified at 20 U.S.C. § 1414(b)(6)).  Because this type of severe discrepancy is the basis of Mackenzie's alleged disability, the Court considers whether the provision applies retroactively to this pending case, and is satisfied that it does not.  The provision that an amendment shall be effective on a date certain is not dispositive of prospective or retroactive application.  Landgraf v. USI Film Prods., 511 U.S. 244, 257-61 (1994); cf. Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1282 (11th Cir. 2005) (noting that Congress often expresses a command to apply a statute retroactively by stating in a provision that it applies "to all proceedings pending on or commenced after the date of enactment").  When "the statute contains no express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."  Landgraf, 511 U.S. at 280.  Where the application of a statute to pending cases would have a genuinely retroactive effect, there is a judicial presumption against retroactive application.  Id.  Here, application of a more restrictive definition of "specific learning disability" would undoubtedly impair rights possessed by plaintiffs when they sought a placement for Mackenzie in the 2002-2003 period.  Thus, the Court does not apply the foregoing amendment to this case.

The other IDEA provisions referenced in this decision, primarily concerning a school system's obligations under the Act, have not been changed substantially by the amendments.  For this reason, and because there is significant doubt as to whether changes to a school system's duties could be applied retroactively under Landgraf, the Court does not apply the 2004 amendments to resolution of this case.  Accordingly, the IDEA citations herein refer to the provisions in effect prior to the 2004 amendments.

      (B) not use any single procedure as the sole criterion for determining whether a
child is a child with a disability . . .; and
      (C) use technically sound instruments that may assess the relative contribution of
cognitive and behavioral factors, in addition to physical or developmental factors.

20 U.S.C. § 1414(b)(2); see also 34 C.F.R. § 300.531-.532  At the same time, the Act states that,

as part of the initial evaluation, an IEP team shall "review existing evaluation data on the child"

and that, "on the basis of that review, and input from the child's parents, identify what additional

data, if any, are needed to determine" whether the child is disabled.  20 U.S.C. § 1414(c)(1); 34

C.F.R. § 300.533(a).

      Under District of Columbia law implementing these requirements, a student's parent may

make a referral to DCPS to commence the initial evaluation process.  See D.C. Mun. Regs. tit. 5,

§ 3005.1-.2 (2003) (now codified at § 3004.1).  The referral must be in writing to the building

administrator of the school that the student attends or is eligible to attend, and must state the basis

for the belief that the child has a disability.  Id.  An individual evaluation of the child is then done

by a child study team (also referred to as an IEP team) and shall include examinations and

evaluations as may be necessary to ascertain the factors that contribute to the suspected disability.

Id. § 3006.2 (now codified at §§ 3004(e)) and 3005.1-.5).  Upon completion of the initial

evaluation and determination of eligibility for special education, the team either indicates the

reasons a student is ineligible or, if eligibility is found, provides a recommendation for an IEP to

the parent. Id. §§ 3006, 3007.

      If a parent disagrees with the eligibility determination (or the IEP, in the case of a

disability finding), he or she has a right to a "due process hearing" before an impartial hearing

officer, which shall be conducted by a State or local educational agency.  20 U.S.C. § 1415(f)(1).

Any party aggrieved by the decision of the hearing officer may bring a civil action challenging the decision.  Id. § 1415(i)(2)(A).

## FACTUAL BACKGROUND[3]

Mackenzie is a student at the Lab School of Washington, a private day school that specializes in educating students with disabilities.  Her parents placed her at the Lab School for the 2000-2001 and subsequent school years because they believed she suffered, and continues to suffer, from learning disabilities which the DCPS has not acknowledged.  Professional evaluations obtained by the parents have concluded that, while Mackenzie is a bright child with many solidly average to above average skills and scores, she suffers from a number of conditions that put her at academic risk, including Sensory Integrative Dysfunction, Attention Deficit Disorder, Phonological Disorder, a reading disorder, disorder of written expression, executive dysfunction, and visual-motor issues.  They also found weaknesses in other areas including auditory processing, visual-motor integration, short-term memory, and reading and written language.

The Kruvants first requested special education services from DCPS on April 25, 2000, near the end of Mackenzie's fourth grade school year.  Following an evaluation by a DCPS school psychologist and meetings with school representatives, DCPS determined that Mackenzie was not eligible for special education services because her intelligence and achievement scores did not demonstrate a disability.  The parents invoked their right to a due process hearing before an impartial hearing officer to review the DCPS decision, pursuant to 20 U.S.C. § 1415(i)(2) and 34

_____

[3]  These facts are taken from the administrative record compiled for the 2003 HOD and decisions issued by other judges of this court and the court of appeals in other cases brought by the Kruvants.  The Court finds that there is no genuine issue of material fact with respect to the facts that are set forth in the record, only disputes as to whether the facts support a finding of no disability.

C.F.R. § 300.507.  On February 26, 2001, the hearing officer concluded that Mackenzie was not

disabled.  Hearing Officer's Determination ("2001 HOD") (A.R. 95).  She explained that the

parents' evidence of disability consisted primarily of the discrepancy between "her low average

achievement scores in reading and the written language, and her high intelligence test score, [and]

her social difficulties, including social skills, self-esteem, and anxiety."  Id.  She then compared

Mackenzie's academic achievement scores to her intelligence scores and concluded that the

discrepancy between academic achievement and IQ -- less than two standard deviations -- was not

of a sufficient magnitude to support finding disability.[4]  Id.  She also noted that Mackenzie's social

difficulties were being addressed by outside counseling.  Id.

The Kruvants sought judicial review of the 2001 HOD in this court.  In Kruvant v. District

of Columbia, Civil Action No. 01-0528 ("Kruvant I"), Judge Roberts of this court affirmed the

HOD, and entered summary judgment in favor of the defendants in that action.  See Memorandum

Opinion and Order filed June 4, 2003 ("Slip op.").  On May 24, 2004, the Court of Appeals

affirmed, holding that the hearing officer used a reasonable standard for determining whether a

"severe discrepancy" existed in Mackenzie's achievement and intelligence scores.  Kruvant v.

District of Columbia, 99 Fed. Appx. 232 (D.C. Cir. 2004) ("Kruvant II").

While the district court litigation was pending, the Kruvants sought special education

services for the 2002-2003 school year, which culminated in a separate determination by an

impartial hearing officer that Mackenzie was not a learning disabled student eligible for special

education services under the IDEA.  Hearing Officer's Determination and Order dated May 27,

---

[4]  Two standard deviations is a discrepancy of 30 points between a student's intelligence
score and achievement score.  2001 HOD at 8 (A.R. 95).  One standard deviation is a discrepancy
of 15 points.  Id. at 4 (A.R. 91).

2003 ("2003 HOD") (A.R. 306).  The events leading up to the determination were brief and

unilluminating.  In a two-sentence letter dated October 7, 2002 to Assistant Superintendent Anne

Gay, the Kruvants stated that they were "continuing to seek special education and related services

from DCPS for the 2002-2003 school year."[5]  A.R. 34.   DCPS reportedly sent a response to the

Kruvants dated October 22, 2002, "reminding [them] of the February 26, 2001 hearing officer

determination that Mackenzie was not eligible for special services, and suggesting that the

Kruvants submit their request for eligibility to the DCPS neighborhood school with residency

documents and supporting materials."  A.R. 100.  Plaintiff's counsel responded to the DCPS

Division of Special Education by letter dated November 7, 2002, noting that the 2001 HOD was

under appeal and that "the Kruvants wish for DCPS to continue to consider Mackenzie's need for

special education and related services from DCPS for the 2002-03 school year."  A.R. 35.

On November 20, 2002, the Kruvants requested a new due process hearing to appeal

DCPS's alleged failure to find Mackenzie eligible for the 2002-2003 school year or to offer her a

FAPE, and also requested as a remedy an order placing and funding Mackenzie at the Lab School

for the 2002-2003 school year. A.R. 36.  The Kruvants alleged that "DCPS ha[d] not responded in

any way to the Kruvants' request for special education consideration."  See Kruvants' Due Process

Hearing Request (A.R. 38) (also describing the "relevant facts" as "the school system's inaction

and lack of response to the Kruvants' request for services").[6]

--------

[5]  Plaintiffs state that, in the October 7, 2002 letter, they offered new information about
Mackenzie's needs (Pls.' Mot. for Summ. J. at 6).  However, no such new information is indicated
in the letter.

[6]  Thus, in contrast to challenging a specific action taken by the agency to deny services --
the situation presented by plaintiffs' request for services for prior 2000-2001 school year --
(continued...)

After more than 45 days passed without action on their due process hearing request, the Kruvants filed a motion for preliminary injunction in <u>Blackman v. District of Columbia</u>, No. 97-1629 (PLF) (D.D.C.), a class action under the IDEA covering, among others, a sub-class of persons whose requests for due process hearings are overdue in violation of the Act's provisions.[7] The Special Master issued a Report and Recommendations on March 6, 2003 ("Report"), indicating that the Kruvants sought a preliminary injunction ordering Mackenzie's placement in a special education program, due to DCPS's failure to provide a timely due process hearing.  A.R. 102.  The Special Master recommended denial of the motion because the only third-party neutral who had examined Mackenzie's entitlement to special education services -- the 2001 hearing officer -- had found her ineligible, but recognized that the Kruvants had an "entitlement to seek a new determination based on changes in Mackenzie's development."  A.R. 102.  The Special Master also noted that DCPS had proposed a hearing date of February 24, 2003 while plaintiffs' motion for injunctive relief was pending.  Judge Friedman subsequently denied the motion for preliminary injunction.  <u>See</u> <u>Blackman</u>, Order dated Mar. 31, 2003.

Instead of convening a formal hearing, the parties agreed to attempt to resolve the matter through written submissions.  Plaintiffs filed a motion for summary decision relying primarily on

---

[6](...continued)
plaintiffs challenge the agency's inaction.  Of course, a lack of action can itself constitute a denial of eligibility for special education services.  <u>See</u> <u>Blackman v. District of Columbia</u>, 277 F. Supp. 2d 71, 79 (D.D.C. 2003).

[7]  The background of that litigation is discussed in <u>Blackman v. District of Columbia</u>, 185 F.R.D. 4, 5-6 (D.D.C. 1999).  Final written determinations are required to be issued within 45 days of the request for a due process hearing.  34 C.F.R. § 300.511(a).  Under the D.C. regulations then in effect, hearings were required to be scheduled within 35 days of the request.  <u>See</u> D.C. Mun. Regs. tit. 5, § 3021.5 (2003).

the evaluations and testing from the 2001 HOD administrative record and the absence of any evidence from DCPS to rebut plaintiffs' proffered evidence.  These evaluations consisted of the Neuropsychological Report by Dr. Elliot Blumenstein based on evaluations done on September 27 and October 2, 2000 (A.R. 42-51); the Comprehensive Speech and Language Assessment by Janine Heller dated July 21, 2000 (A.R. 52-63); the Occupational Therapy Brief Evaluation Summary by Martha Kiger dated July 20, 2000 (A.R. 64-68); and, to a lesser extent, the Psychological and Educational Evaluation based on evaluations done in February 1998 by Mary Beardsley and Michael Jasnow (A.R. 69-81).  The 2001 HOD also included a Psychoeducational Evaluation from August 2000 by Deidra Alexander, a DCPS school psychologist.  Attachment C to Defs.' Notice of Filing (filed Jan. 27, 2005).[8]  Each of these evaluations was discussed in the judicial  review of the 2001 HOD in Kruvant I, No. 03-1402, slip op. at 5-9 (filed June 4, 2003). The only new evidence produced by plaintiffs consisted of a copy of Mackenzie's Lab School IEP for the 2002-2003 school year (A.R. 10-30) and the declaration of Karen Duncan (A.R. 31-33), the Academic Director of the Lab School.

In response, DCPS relied solely on the doctrine of res judicata to request dismissal, arguing that a decision on the merits of Mackenzie's disability status had already been made.  A.R. 86-87.   In addition, it objected to plaintiffs' reliance on the same evaluations reviewed in the 2001 HOD to support a finding of disability.  Id.  DCPS did not respond to plaintiffs' argument

---

[8]  The Alexander evaluation was not in the 2003 HOD administrative record, but was discussed in detail in the 2001 HOD, and is relevant to an assessment of Mackenzie's disability status.  Plaintiffs have not objected to defendant's submission of the evaluation to the Court. Accordingly, the Court finds it appropriate to receive this additional evidence pursuant to 20 U.S.C. § 1415(i)(2)(B)(ii).

that it had a duty to conduct new evaluations and testing due to the passage of two years' time since the 2001 HOD.

On May 27, 2003, the hearing officer issued its determination that Mackenzie was not a learning disabled student eligible for special education services.  A.R. 121-22.  He found that DCPS carried the burden of proving that it had not denied a FAPE to Mackenzie (in effect, the burden of proving that Mackenzie does not have a disability), but found that DCPS had met its burden of proof.  The hearing officer noted that the only evaluations in the record were the same evaluations that were the basis for the prior 2001 determination on ineligibility, and found that "no new evaluations or other evidence" had been presented indicating that Mackenzie's needs had changed.  Id. at 5.  However, he implicitly rejected DCPS's res judicata argument, when he stated that he was "not bound by the prior HOD determination," and explained that he "independently agreed with the analysis leading to the finding of ineligibility."  Id. at 5. He also reviewed the Lab School IEP for the 2002-2003 school year and the Duncan declaration, but noted that they are not evaluations (apparently referring to clinical evaluations) "and do not offer support for a determination that the student is . . . a learning disabled student."  A.R. 122.

The hearing officer also gave consideration to the import, if any, of the October 22, 2002 letter from the Assistant Superintendent to plaintiffs' counsel.  The letter was not part of the record, but the hearing officer took administrative notice of the letter and its contents based primarily on its description in the Report of the Special Master.  He found that the letter suggested that the parents seek an eligibility determination from the neighborhood school (A.R. 122) – an apparent reference to the procedure by which a parent may make a referral for an initial evaluation

of a child.  <u>See</u> D.C. Mun. Regs. tit. 5, § 3005.1 (2003) (now codified at § 3004.1(c) (2005).  He

further found "no evidence that the parents complied with this suggestion."  A.R. 122.

Plaintiffs now seek judicial review of the 2003 HOD determination before this Court.

<u>**STANDARD OF REVIEW**</u>

**I.    Summary Judgment**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial

responsibility of demonstrating the absence of a genuine dispute of material fact.  <u>See</u> <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion

by "informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

<u>Id.</u> (quoting Fed. R. Civ. P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude

summary judgment, the court must regard the non-movant's statements as true and accept all

evidence and make all inferences in the non-movant's favor.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>,

477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere

existence of a scintilla of evidence" in support of its position.  <u>Id.</u> at 252.  By pointing to the

absence of evidence proffered by the non-moving party, a moving party may succeed on summary

judgment.  <u>Celotex</u>, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted."  <u>Anderson</u>, 477 U.S. at 249-50 (internal citations

-11-

omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

## II.     Judicial Review of IDEA Due Process Hearing Determinations

The IDEA authorizes "any party aggrieved by the findings and decision" rendered during the impartial due process hearing to "bring a civil action" in state or federal court.  20 U.S.C. § 1415(i)(2)(A).  The reviewing court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  Id. § 1415(i)(2)(B).  "[A] party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong."  Reid v. District of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)).

The Supreme Court has interpreted the "preponderance" standard of review not to be an allowance of unfettered de novo review, in the context of judicial review of the adequacy of an IEP.  Hendrick Hudson Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982).  The Court further observed that "the fact that § 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to those proceedings."  Id.  Several courts have applied this "due weight" standard to eligibility determinations, describing it as calling for some measure of deference to the HOD. See Kroot v. District of Columbia, 800 F. Supp. 976, 980-981 (D.D.C. 1992); Krista P. v. Manhattan Sch. Dist., 255 F. Supp. 2d 873, 884 (N.D. Ill. 2003).

Although both parties here submit that the "due weight" standard of review applies to eligibility determinations, there is a growing body of case law concluding that a traditional de novo standard of review applies to such determinations -- a matter discussed by the court in Kruvant I.  See Slip op. at 14 (citing Muller v. Comm. on Special Educ. of the East Islip Union Free Sch. Dist., 145 F.3d 95, 101-02 (2d Cir. 1998)); accord Katherine S. v. Umbach, 2002 WL 226697 (M.D. Ala. 2002).  These decisions characterize the issue of eligibility as a question of interpretation of the definitions set forth in the Act and federal regulations, and conclude that "the state administrative officials [are] in no better position than the district court to make conclusions with respect to [the child's] statutory eligibility based on the record."  Muller, 145 F.3d at 102. Based on this reasoning, the court in Kruvant I applied a de novo standard of review.  While the Court of Appeals affirmed the decision, it did not address the standard of review, and the issue thus remains unresolved in this Circuit.  However, the court has recently reiterated that "the district court's authority to 'hear additional evidence at the request of a party,' and 'base its decision on the preponderance of the evidence ' . . . plainly suggest[s] less deference than is conventional' in administrative proceedings."  Reid, 401 F.3d at 521 (quoting Kerkam, 862 F.2d at 887).

In the particular eligibility determination presented here, there are very few facts at issue that have not already been reviewed by another court.  The issue presented involves interpretation of the Act and implementing federal and local regulations, and to a far lesser extent, a review of the factual findings made by the hearing officer.  Accordingly, the Court applies a de novo standard of review in this case, but declines to address whether a de novo standard is applicable in all eligibility determinations.

## DISCUSSION

The outcome of this case hinges on determining the scope of DCPS's duty to evaluate a student where an administrative determination for a prior school year -- here, one for the 2000-2001 school year -- has concluded that the child does not have a disability under IDEA.  Both parties agree that, at the due process hearing, DCPS bears the burden of proving the appropriateness of a child's placement -- and thus whether the child has a disability -- pursuant to the District's regulations.[9]  However, whether DCPS has an affirmative duty to produce updated evaluation data and similar materials relating to the child's disability status would affect whether it has met its burden of proof.  A corollary issue is the impact, if any, a non-eligibility determination for a prior school year has with respect to eligibility determinations for subsequent school years.

The Kruvants argue that the Act places the burden of conducting updated evaluations on the school system, and that a prior determination of non-eligibility plays no role in a subsequent eligibility determination.  They base this argument on the "child-find" obligation that the Act imposes on schools, the obligation of a State educational agency to conduct an initial evaluation for each child being considered for special education services, and D.C. law placing the burden of proving non-eligibility on DCPS.  Defendants argue that DCPS may meet its burden of proof by relying on the 2001 HOD as prima facie evidence of non-eligibility because the parents rely on substantially the same evaluations to support the claim of disability.  Defendants disagree that the placement of the burden of proof on DCPS, or any other law, creates a duty to develop or produce

---

[9]  See D.C. Mun. Regs. tit. 5, § 3022.16 (2003) ("[DCPS] shall bear the burden of proof, based solely upon the evidence and testimony presented at the hearing, that the action or proposed placement is adequate to meet the educational needs of the students"); Kroot, 800 F. Supp. at 981-82.  The burden of proof provision is now codified at D.C. Mun. Regs. tit. 5, § 3030.3

additional evaluation data on Mackenzie's current educational status.  Defendants do not raise the res judicata argument they made before the hearing officer.

The Court first looks at the regulatory framework governing "initial evaluations" of a child suspected of having a disability to determine whether DCPS was required under federal or local regulations to conduct such an evaluation.  The duty to conduct an initial evaluation is set forth in § 1414 and also arises from the "child find" provisions of the Act.  20 U.S.C. § 1412(a)(3)(A); 34 C.F.R. § 300.125(a)(1)(I).  Under these provisions, State educational agencies are under an affirmative duty to "identify, locate, and evaluate" all children with disabilities residing in the State, and must promulgate policies and procedures to fulfill this duty.  See Wiesenberg v. Bd. of Ed. of Salt Lake City Sch. Dist., 181 F. Supp. 2d 1307, 1310-11 (D. Utah 2002) (quoting § 1412(a)(3)(A)); Dep't of Educ., State of Hawaii v. Cari Rae S., 158 F. Supp. 2d 1190, 1193 (D. Haw. 2001) .  The scope of the "child find" duty includes "children who are suspected of being a child with a disability . . . even though they are advancing from grade to grade."  34 C.F.R. § 300.125(a)(2)(ii) (emphasis added).   A child may be suspected of having a disability based on written parental concern.  See Wiesenberg, 181 F. Supp. 2d at 1311.

The DCPS "child find" policies and procedures, including those governing an "initial evaluation," are set forth in D.C. Mun. Regs. tit. 5, §§ 3005.1-.2 (2003) (now codified at § 3004.1).  Under District of Columbia law, a student's parent may make a referral to DCPS to trigger the initial evaluation process by sending in a written request to the neighborhood school stating the basis of the suspected disability.  Id. § 3005.1.  An individual evaluation of the child is then done by a child study team (referred to as an IEP team in subsequent regulations) and shall

include examinations and evaluations as may be necessary to ascertain the factors that contribute to the suspected disability.  Id. § 3006.2 (now codified at §§ 3004(e)) and 3005.1 - .5).

Nothing in the federal or local regulations limits the District's obligation to conduct an "initial evaluation" to a single occurrence that forever fulfills its "child find" obligations as to that child, and, indeed, such an interpretation would be at odds with the child find provision of the Act, as well as the District's implementing regulations.  The provisions of the Act requiring reevaluations of children with disabilities at least every three years -- with other events triggering reevaluation sooner -- clearly recognize that a child's disability status is subject to change. 20 U.S.C. § 1414(c)(2).  Indeed, defendants acknowledge at the outset of their brief that they agree that the initial evaluation process is required upon a referral by a parent, even where a prior ineligibility determination has been issued -- an interpretation in tension with its subsequent statement that it has no duty whatsoever to conduct any additional testing or evaluations.  Defs.' Br. at 5 ("[w]hen a request for services is made, the DCPS reviews existing evaluations of the child, determine[s] whether additional evaluations are needed, and, if so, conducts them and then determines whether the child is a child with a disability under the IDEA," citing 20 U.S.C. § 1414 and 34 C.F.R. § 300.530-.534.).

While the case law on the relationship between prior ineligibility determinations and subsequent requests for special education services is sparse, at least one case is instructive and indicates that the proper approach is to require an initial evaluation upon a referral by the parents, even for those previously found ineligible.  In Krista P. v. Manhattan Sch. Dist., 255 F. Supp. 2d 873 (N.D. Ill. 2003), the school system had made two prior determinations that a child did not have a disability under the Act -- one for the child's first grade year, the other for the fourth grade

year -- and declined to conduct a full set of evaluations and testing upon the parents' third request for special education services for the sixth grade.  Id. at 876-881, 886.  A team of educational professionals conducted the equivalent of an initial evaluation, which included a review of current academic records as well as a review of the existing comprehensive data underlying the previous ineligibility determinations, and used that as a basis for its conclusion that a third full "case study evaluation" of the child was not necessary.  Id. at 879-81.  Reviewing the hearing officer's subsequent determination that the child was not disabled, the court affirmed based on the team's review of the student's current academic record and existing evaluation data, which it also found supported the school's decision not to conduct another round of comprehensive evaluations.  Id. The court further found that the existing evaluation data could satisfy the types of information required of an initial evaluation under 34 C.F.R. § 300.532-.33 (e.g., tests tailored to meet specific areas of educational need).  Id. at 887-88.

Pasatiempo v. Aizawa, 103 F.3d 796 (9th Cir. 1996), is also instructive.  The Ninth Circuit there concluded that a parent request for an evaluation based on the parent's suspicion of disability is sufficient to trigger the procedural safeguards of IDEA, in the context of a challenge to a school system's failure to delineate which of its various tests measuring "achievement delays" triggered the IDEA's procedural protections.  Id. at 802-03 ("the legislative emphasis upon joint decisionmaking suggests that when a parent suspects his or her child is disabled and requests an evaluation, that suspicion should be sufficient to place any subsequent action or inaction taken with respect to that request within the ambit of the IDEA").  In reaching this conclusion, the court rejected the school system's position that the IDEA's procedural protections are triggered only when the school system suspects a disability.  Id. at 801.  The court reasoned that Congress

intended the procedural protections to require school districts to respond adequately to parental

concerns about their children, and that "the informed suspicions of parents, who may have

consulted outside experts, should trigger the statutory protections." Id. at 802.  This same

rationale applies with equal force to parental requests for special education services in the years

following the first request.  Having considered the "child find" and "initial evaluation" provisions

of the Act and regulations, together with the case law,[10] the Court concludes that a non-eligibility

determination for a prior school year does not relieve the District of conducting a subsequent

"initial evaluation" for a later school year if a parent submits a referral in compliance with the

regulations.[11]  The Court further concludes that, pursuant to § 1414(c), the data underlying the

prior determination may be used to satisfy the requirements of an "initial evaluation" where the

IEP team reasonably concludes that no additional evaluation or other such data is necessary.[12]

_____

[10]  Plaintiffs' reliance on Hacienda La Puente Unified Sch. Dist. of Los Angeles v. Honig, 976 F.2d 487 (9th Cir. 1992), however, is misplaced.  Hacienda stands for the well-established proposition that children suspected of having a disability, but not previously identified as disabled, are entitled to a due process hearing on their disability status.  Unlike the Hacienda defendants, DCPS does not contest that the hearing officer had jurisdiction to conduct the due process hearing.

[11]  In reaching this conclusion, the Court does not, however, accept the parents' contention that DCPS is automatically required to conduct additional testing and professional evaluations.  As noted above, the Act requires that, as part of the "initial evaluation," an IEP team (defined in the Act to include educational professionals, the parents, and certain others) shall review existing evaluations and then "identify what additional data, if any" are needed to make a disability determination.  20 U.S.C. § 1414(a)(1); 34 C.F.R. §§ 300.533.  The clear import of the "if any" phrasing is that the school system may conclude that additional data are not needed.

[12]  Defendants' brief suggests that such an initial evaluation was conducted in this case.  Defs. Br. at 5 ("A review of existing evaluations overwhelming[ly] established that Mackenzie was not disabled within the meaning of the IDEA," citing 20 U.S.C. § 1414).  However, DCPS did not argue before the hearing officer that an IEP team or its equivalent had reviewed the evaluations, much less that a team made a determination that no additional data was needed.  Nor can the Court find any evidence that an IEP team was even remotely involved.  Instead, the record reflects that the only DCPS member to consider the evaluations was DCPS counsel, who

(continued...)

This interpretation of the regulations does not resolve the matter, however.  The obligation to conduct an "initial evaluation" is triggered, in the first instance, by a parent referral that complies with the regulations.  Such a referral is lacking here.  Plaintiffs assert that by letter dated October 7, 2002 to Assistant Superintendent Ann Gay, they made a request for special education services for the 2002-2003 school year which triggered DCPS's duty to conduct an initial evaluation.  However, the D.C. regulations require that referrals be submitted to "the school which the student attends or is eligible to attend," and that they also state "the basis for the belief that the student may have a handicapping condition."  D.C. Mun. Regs. tit. 5, §§ 3005.1, 3005.2 (2003) (now codified at § 3004.1)  A review of the October 7, 2002 letter indicates that it failed to meet either of these requirements,[13] and, indeed, the hearing officer specifically found that there was no evidence that the Kruvants had submitted their request for special education services to their neighborhood school.  A.R. 21-22.  While DCPS did not raise the Kruvants' failure to comply before the hearing officer or in its brief before this Court, the hearing officer made a specific factual finding on this issue, and thus it is appropriate for the Court to consider it.

The hearing officer took judicial notice of the substance of DCPS's October 22, 2002 letter to the Kruvants, which "remind[ed] [them] of the February 26, 2001 hearing officer determination that Mackenzie was not eligible for special services, and suggest[ed] that the Kruvants submit their request for eligibility to the DCPS neighborhood school with residency documents and

---

[12](...continued)
referenced them only in making a res judicata argument.  See DCPS Opp. to Request for Summ. J. at 2 (A.R. 86-87).

[13]  The body of the letter states in full:  "I am writing to confirm that my clients are continuing to seek special education and related services from DCPS for the 2002-2003 school year.  Please contact my office if you have any questions regarding this matter."  A.R. 34.

supporting materials."[14]  Special Master Report at 2 (A.R. 100) (discussed in 2003 HOD at 4

(A.R. 120)) (emphasis added).  He then found that there was "no evidence that the Kruvants

complied with this suggestion."  Although he did not expressly discuss the consequences of the

Kruvant's failure to submit a proper request to the neighborhood school, the regulations make

clear that the referral to the neighborhood school is the triggering event for the initial evaluation

by a child study team.[15]  See D.C. Mun. Regs. tit. 5, § 3004.

In other words, although the Kruvants make much of the DCPS's failure to conduct an

initial evaluation -- and any associated new testing, classroom evaluations, or professional

evaluations that the child study team may find necessary -- the absence of such evaluations is in

fact due to their own failure properly to commence the process.  Where the absence of an initial

evaluation by a child study team is caused by the failure of the parents to initiate that process,

there is no basis for holding the absence of such evaluations against the DCPS.  Accordingly, the

Court will assess whether DCPS has met its burden of establishing that Mackenzie is not eligible

for special education services based on the existing record, without the initial evaluation otherwise

---

[14]  As noted in the Background section, supra, the letter is not in the administrative record
for the 2003 HOD, but was described in the Report of the Special Master in the Blackman
proceedings.

[15]  The requirement for submission of the referral to the neighborhood school is more than
a mere technicality.  The Act contemplates that special education services "will be provided where
possible in regular public schools" (School Comm. of the Town of Burlington, Massachusetts v.
Dep't of Educ. of the Commonwealth of Massachusetts, 471 U.S. 359, 369 (1985)), and the
implementing regulations further specify that the placement be "as close as possible to the child's
home."  34 C.F.R. § 300.552(b)(3).  Thus, the requirement to submit referrals to the neighborhood
school is not one that should be taken lightly.

required.  To do otherwise would enable parents to skew the process, to the prejudice of DCPS, through their own failure to abide by the basic requirement for initiating the process.[16]

Reviewing the 2003 HOD in this light, the Court concludes by a preponderance of the evidence that Mackenzie does not have a disability.  As the hearing officer explained, "the only evaluations of record are MK-7 through MK-10 [the Blumenstein, Heller, Kiger, and Beardsley/Jasnow evaluations], which were the basis for the prior HOD determination of ineligibility.  No new evaluations or other evidence of the student's eligibility for special education as learning disabled has been presented here that would indicate that the student's needs have changed."  A.R. 121.  The opinions in Kruvant I and Kruvant II explain in detail the reasons those evaluations failed to demonstrate a "specific learning disability" by a preponderance of the evidence, and the Court will not repeat those explanations here, except to briefly summarize. Kruvant I reviewed the same evaluations and observed that, although several different kinds of disorders were described, "[t]he crux of the issue . . . is whether Mackenzie's condition presented a 'severe discrepancy' between achievement and intellectual ability."  Slip op. at 16.  In addition to the DCPS psychologist's testimony of lack of disability, the court noted that "professionals retained by plaintiffs drew the same conclusion," citing the Beardsley/Jasnow and Blumenstein reports.  Id. at 17-19.  The Court of Appeals affirmed, focusing on the lack of discrepancy between achievement and intelligence scores exceeding the threshold of two standard deviations.

_____

[16]  The Court does not believe that a remand to the hearing officer, and then to DCPS, to complete an initial evaluation is warranted.  At issue here is the determination whether Mackenzie qualifies as a child with a disability for the 2002-2003 school year.  That year, and two others, have now passed, and the initial evaluation would likely be problematic at this point.

Kruvant II, 99 Fed. Appx. at 233.  Thus, these same evaluations clearly establish by a

preponderance of the evidence that Mackenzie is not disabled.

The Kruvants also suggest that the HOD should be rejected because the declaration of the

Lab School administrator, Karen Duncan, as well as the Lab School IEP program for the 2002-

2003 school year, considered together with the evaluations in the record for the 2000-2001 HOD,

establish that Mackenzie has a disability.  The Court has conducted an independent review of

these documents and finds no basis for disturbing the hearing officer's conclusion that they do not

support finding Mackenzie learning disabled.  The Duncan declaration provides no substantive

explanation that could form the basis of a disability determination -- only conclusory statements

regarding disability.  In relevant part, it states:  "I am familiar with the federal definition for

special education eligibility under the [Act], and I believe that Mackenzie meets the criteria for

eligibility, as a student with a learning disability."  A.R. 32.  She does not describe the rationale or

records that support her conclusion, with the exception of a brief reference to records she

reviewed to determine the educational benefit provided by the Lab School.  Id. (referencing

Mackenzie's "educational file and testing, [personal] classroom observations, and [] conversations

with her parents and teachers").   No further description of the records or explanation is provided

by Ms. Duncan.

The Lab School IEP contains an array of different testing scores, but does not contain an

intelligence score.  Without that score, there is no basis for making a determination that there is a

"severe discrepancy" in Mackenzie's achievement and intelligence scores.  It is also noteworthy

that Mackenzie's scores were solidly in the average to above average range, with a handful of

scores only marginally below average.  Lab School IEP at 2 to 4a (A.R. 11-17).  Therefore, the

data in the Lab School IEP also does not provide a basis for disturbing the hearing officer's

determination.

## CONCLUSION

Upon consideration of the administrative record and the findings in the 2003 HOD, and for

the reasons stated above, the Court affirms the 2003 HOD finding Mackenzie Kruvant ineligible

for special education services for the 2002-2003 school year because it was rendered in

compliance with applicable procedures and supported by a preponderance of the evidence.

Accordingly, the Court grants defendants' motion for summary judgment, and denies plaintiffs'

motion for summary judgment.  A separate order will be issued.


                                        /s/
                            _____
                                  JOHN D. BATES
                            United States District Judge

Date:   August 10, 2005

Copies to:

Michael J. Eig
Haylie M. Iseman
Michael J Eig and Associates, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, MD 20815
Email:  michael.eig@lawforchildren.com
Email:  haylie.iseman@lawforchildren.com
*Attorneys for Plaintiffs*

Veronica Porter
Office of the Attorney General
   for the District of Columbia
441 Fourth Street, N.W., Sixth Floor South
Washington, DC 20001
Email:  veronica2.porter@dc.gov
*Attorney for Defendants*